Joe CLARK, Rex Martin and William Glass *v.*
James CASEBIER

CA 05-92 215 S.W.3d 684

Court of Appeals of Arkansas
Opinion delivered October 12, 2005

*Armstrong Allen, PLLC,* by: *Charles A. Banks* and *Jeff R. Priebe,* for appellants.

*Cahoon & Smith,* by: *David W. Cahoon,* for appellee.

LARRY D. VAUGHT, Judge. Appellants Joe Clark, Rex Martin, and William Glass appeal the order of the Poinsett County Circuit Court that quieted title to disputed property in favor of appellee James Casebier following a bench trial. Appellants argue on appeal that the trial court erred in finding (1) that there had been an agreement by acquiescence that the irrigation ditch represented the boundary line between the two properties and (2) that the north side of the irrigation ditch was the boundary line between the properties. We disagree and affirm.

In December 2002, appellants purchased a tract of land from Karen and John Hutchison that had been previously owned by the Kennedy family. Prior to purchasing the land, appellants' bank required a survey of the property. This survey revealed an irrigation ditch running east to west at the southern end of appellants' property about sixty feet from the surveyed boundary line. The property located between the irrigation ditch and the actual southern boundary line of appellants' property is the area in dispute. Until the survey was completed, appellants had not been shown any property corners or boundaries on the property.

Butch Hime, the surveyor appellants hired, testified that he did not find all the markers for the property corners establishing appellants' property boundaries. Instead, he used a proportionate survey technique to establish the corners. The boundary lines were different than the original government survey showed, but this did not cause Hime concern.

Appellee owned the tract of land south of appellants' property and testified that he used the irrigation ditch to provide water for his crops. He had several pieces of irrigation equipment, including a permanent relift pump, on the disputed property. Appellee had purchased his property from Orville Thomas in March 1986. Orville Thomas testified that his family had owned the land since the 1950s but that he had been familiar with the property since the 1920s. Thomas testified that he helped his father dig the irrigation ditch sometime in the 1960s. He asserted that they had attempted to locate the boundary line, and using monuments from a previous survey, they dug the irrigation ditch on his father's property. Thomas testified that at the time it was dug, the ditch "wasn't very wide." He declared that the ditch was eight or nine feet wide when the water was its highest but that it was not that wide when it was dug. Rather, the ditch had washed out some

over time. Thomas stated that the purpose of the ditch was to bring water from the river for irrigation of crops and that it had always been used for that purpose. When appellee purchased the land, an older model relift pump was located near the ditch, and appellee replaced it with a newer model. Thereafter, appellee placed an underground pipe in the ground connected to the relift pump to make taking water from the ditch easier. This pump and pipe became permanent fixtures on the property. Appellee also testified that compared to the first time he was on the property was in 1971 or 1972, the ditch looked the same in the present day as it did then.

Both Thomas and appellee testified that until appellants complained, no adjoining landowner had raised any objection to Thomas's or appellee's use of the irrigation ditch and the disputed property. Appellee testified that it was his understanding that his property line was the irrigation ditch. He stated that he used the property up to the irrigation ditch as his own and used the irrigation ditch to water his crops. He stated that he removed silt from the irrigation ditch in 1986 or 1987, he hired the Kennedys to remove silt from in it in 1989, and he removed the silt himself again in 1992 and 1998. He stated that the Kennedys were working under contract for him when they removed the silt and that they did not object to his working on the irrigation ditch.

After the survey was completed and the land purchased, appellants asked appellee to remove the relift pump from the disputed property. Appellee refused, and appellants filed suit. Following a bench trial, the judge found that based on the prior conduct of the landowners, a boundary by acquiescence existed and that the northern edge of the irrigation ditch was the boundary line between the properties.

 For their first point on appeal, appellants argue that the trial court erred in finding that there was an agreement by acquiescence to make the irrigation ditch the boundary line between the properties. Whenever adjoining landowners tacitly accept a fence line or other monument as the visible evidence of their dividing line and apparently consent to that line, it becomes a boundary by acquiescence. *Hedger Bros. Cement & Materials, Inc. v. Stump*, 69 Ark. App. 219, 10 S.W.3d 926 (2000). A boundary line by acquiescence is inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of the boundary line. *Id.* at 222, 10 S.W.3d at 928. The

location of a boundary line is a question of fact. *Id.*, 10 S.W.3d at 928. Although equity cases are reviewed de novo on appeal, we will affirm a trial court's finding of fact with regard to the location of a boundary line unless the finding is clearly erroneous. *Id.*, 10 S.W.3d at 928. A finding is clearly erroneous when, although there is evidence to support it, we are left — after considering all of the evidence — with the definite and firm conviction that a mistake has been committed. *Id.*, 10 S.W.3d at 928. Whether a boundary line by acquiescence exists is to be determined upon the evidence in each individual case. *Id.* at 222–23, 10 S.W.3d at 928. In reviewing a trial court's findings of fact, we give due deference to the trial judge's superior position to determine credibility of the witnesses and the weight to be accorded to their testimony. *Riddick v. Streett*, 313 Ark. 706, 858 S.W.2d 62 (1993).

It is also settled law that a boundary line by acquiescence may well exist without the necessity of a prior dispute. *Walker v. Walker*, 8 Ark. App. 297, 651 S.W.2d 116 (1983). Nor is there any requirement of adverse usage up to a boundary fence to establish a boundary by acquiescence. *Id.* at 298, 651 S.W.2d at 117. Instead, whenever adjoining landowners tacitly accept a fence line or other monument as the visible evidence of their dividing line and thus apparently consent to that line, it becomes the boundary by acquiescence. *Id.* at 298–99, 651 S.W.2d at 117. When the adjoining owners occupy their respective premises up to the line they mutually recognize and acquiesce in as the boundary for a long period of time, they and their grantees are precluded from claiming that the boundary thus recognized and acquiesced in is not the true one, although it may not be. *Id.* at 299, 651 S.W.2d at 117.

There is ample evidence to support the trial court's findings and conclusions in this case. Since the irrigation ditch was dug in the 1960s, the owners of the southern tract of land have used the disputed property and the irrigation ditch as their own. Orville Thomas testified that when his father dug the ditch, it was with the purpose of doing so on the property line. Thomas, as well as Casebier, testified that no one ever objected to their use of the disputed land. Additionally, Thomas and Casebier were the only people to ever maintain the ditch. The one time the Kennedys removed silt from the ditch was at Thomas's direction. Appellants

offered no testimony to contest appellee's evidence that the previous owners of the land had acquiesced in the irrigation ditch being the boundary.

Appellants argue that our recent opinion in *Robertson v. Lees*, 87 Ark. App. 172, 189 S.W.3d 463 (2004), supports their proposition that the trial court erred in finding a boundary by acquiescence. There we stated that our supreme court has held that the mere existence of a physical boundary, without evidence of mutual recognition, cannot sustain a finding of such a boundary as the property line. *Id*. Additionally, we noted that the intention of the parties, not the physical boundary itself, is what controls when determining whether a boundary line exists through acquiescence. *Id*. However, in *Robertson* we affirmed the trial judge's finding that no boundary by acquiescence existed because the appellant had not produced any evidence that the fence at issue had been intended to be the boundary line. Rather, the appellant attempted to rely on silence from the appellee and his predecessors in title. We specifically noted that the appellee had not been silent on the matter but had asked for persons not to mow the disputed tract and gave permission for a clothesline to be built.

This case is distinguishable from *Robertson* because we have evidence of the parties' intent — Orville Thomas's testimony — and we have silence from appellants' predecessors in title — no objection was ever made to Thomas or Casebier regarding their use of the irrigation ditch as the boundary line. The trial judge could have correctly found that it had been the previous landowners' intent that the irrigation ditch serve as the boundary line. We cannot say the trial judge clearly erred on this point.

Appellants' second point on appeal is that the trial court erred in finding that the north line of the irrigation ditch represented the boundary line between the properties. A boundary by acquiescence is usually represented by a fence, a turnrow, a lane, a ditch, or some other monument tacitly accepted as visible evidence of a dividing line. *See Palmer v. Nelson*, 235 Ark. 702, 361 S.W.2d 641 (1962). A boundary by acquiescence has been affirmed when the parties tacitly agreed on a line running between two marks, such as concrete stobs, in *Disney v. Kendrick*, 249 Ark. 248, 458 S.W.2d 731 (1970), and trees in *Ward v. Adams*, 66 Ark. App. 208, 989 S.W.2d 950 (1999). However, Arkansas law does not support the establishment of a boundary by acquiescence along an invisible line between two large land forms, such as levees, that are

not truly capable of being used as accurate markers of a boundary. *Stump*, 69 Ark. App. at 223, 10 S.W.3d at 928–29. Appellants cite to *Stump* and *Lammey v. Eckel*, 62 Ark. App. 208, 970 S.W.2d 307 (1998), to argue that the trial court erred in concluding that the northern edge of the irrigation ditch established the boundary line because that boundary line is not "definite." However, in both *Stump* and *Lammey*, the purported boundary lines were either invisible lines where no physical object separated the property or marked by uncertain physical objects such as stumps, bushes, and trees. That is not the case here. Rather, the irrigation ditch is a definite, physical separator. It creates a definitive physical boundary between the properties. Although the irrigation ditch does not reach the entire length of the boundary between properties, it covers the vast majority of it, with the ditch ending less than one hundred feet from the eastern edge of the properties. Additionally, although appellants argue the ditch widened over time, the testimony presented at trial does not show any appreciable amount of expansion. Appellants cite no authority to support a finding that such an inconsiderable amount of expansion would establish indefiniteness. Based on our prior precedent, we are satisfied that the trial court did not clearly err in using the northernmost edge of the irrigation ditch as the boundary marker.

Affirmed.

GRIFFEN and ROAF, JJ., agree.