SLIP OPINION  Cite as 2015 Ark. App. 105

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-357

| | |
|---|---|
| | **Opinion Delivered** February 18, 2015 |
| DELANO JACKSON FLETCHER and LINDA LOUISE FLETCHER, Husband and Wife | APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT [NO. CV-12-60] |
| APPELLANTS | |
| V. | HONORABLE TIM WEAVER, JUDGE |
| VERNA STEWART and LINDA HAYES | |
| APPELLEES | AFFIRMED |

## M. MICHAEL KINARD, Judge

Appellants Delano and Linda Fletcher appeal from the trial court's order quieting title to disputed property in appellees Verna Stewart and Linda Hayes. Appellants argue that the trial court erred in finding that appellees had proved adverse possession and boundary by acquiescence. We affirm.

Appellees, who are sisters, filed a petition to quiet title by adverse possession against appellants on March 12, 2012. They later filed amended petitions adding an alternative claim of boundary by acquiescence and three defendants they asserted may claim an interest in the property. The subject property was approximately twelve acres in Cleburne County that appellants had title to by deed but which appellees' family had possessed for decades.

Evidence at trial established that appellants had title to several tracts of land west of Center Ridge Road, including the subject property. Appellees had a deed for ten acres east

of the road; however, family members had possessed the twelve acres west of the road as early as 1951. Evidence was introduced concerning a 1951 lawsuit brought by G.R. Miller, a predecessor in title of appellees, against Arvel Elms, a predecessor in title of appellants, to prevent Elms from building a fence along the west side of the county road that would have enclosed the twelve acres. Witnesses testified that in 1951 a surveyor established that the line dividing the properties was west of the twelve acres. Appellees and others recalled that they were told that Elms did not appear for court but that the matter was settled and a fence was built on the west side of the twelve acres instead of the east side of it along the county road. This fence partially remained. Two other fences were later constructed along the western boundary of the twelve acres. Linda Hayes testified that the parties in the 1951 lawsuit were told to build fences four feet from the surveyed line.

Appellees' parents, the Burlesons, began building the home that appellees grew up in on the subject property in 1956, although they were not deeded the ten acres from relatives G.R. and Julia Miller until 1967. The Burlesons gardened and raised chickens and cattle on the subject property. Friends and family members remembered a fence on the west side of the Burlesons' property that they understood to be the property line, and the fence was maintained to keep cows in. Appellees last lived at the home in the early 1970s. Mr. Burleson died in 1987, but Mrs. Burleson lived on the property until 2005. Mrs. Burleson never told anyone that someone had threatened to take her land. She later deeded the property to appellees.

Appellant Delano Jackson Fletcher testified that he bought eighty acres, including the

disputed twelve acres, from Dorise Chastain in 1991 and 1992. Fletcher had known since the 1980s that the Burlesons lived on the subject property, and he did not believe he was buying that property when he purchased property from Chastain. He later discovered that the fences were in the wrong place after receiving a survey from Chastain. Fletcher testified that he told Mrs. Burleson about his discovery in 1993, and she told him that the matter had been settled in court a long time ago and that she had a deed to her property. Fletcher checked the courthouse records then reported back to Mrs. Burleson that the court case showed no settlement or decision and that her property was actually across the road. He told her that he was not going to try to take her home and that she could stay there as long as she lived.

In 1995, Fletcher started building a fence west of the Burleson fence even though he felt like he owned all of the property. He granted an easement right-of-way to Tumbling Shoals Water Association, Inc., in 1995, and in 2005, he executed an oil-and-gas lease with SEECO, Inc., which included the subject property. Appellants had not used the subject property. They introduced evidence that the home and other structures on the property were in disrepair and that the electricity and water had been shut off for several years.

The trial court found that appellees had proved both boundary by acquiescence and adverse possession. Regarding boundary by acquiescence, the court found that, since the dispute over the location of the property line in 1951, a fence was constructed and appellees and their parents had enjoyed uninterrupted use of the subject property up to the fence. The court noted that an actual agreement between Mr. Miller and Mr. Elms was not required, and silent acquiescence is sufficient where mutual recognition of the boundary line can be inferred

3

from the conduct of the parties over a period of years. The court also found that the evidence was undisputed that appellees and their parents had been in possession of the subject property continuously for more than seven years and that their possession was visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner since at least 1967 when the Burlesons received their deed to the contiguous property. The court found that title by adverse possession had vested in the Burlesons no later than 1975. The court quieted title to the subject property in appellees subject to SEECO's oil-and-gas lease and to the easement and right-of-way to Tumbling Shoals Water Association.[1] Appellants' claims to the property were extinguished and declared null and void.

This court reviews quiet-title actions de novo; however, we will not reverse the trial court's findings of fact unless they are clearly erroneous. *Smith v. Smith*, 2011 Ark. App. 598, 385 S.W.3d 902. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id*. We give due deference to the trial court's superior position in determining witness credibility and the weight to be accorded their testimony. *Id*.

Appellants first argue that appellees failed to prove adverse possession because they did not have color of title to the subject property. In 1995, the General Assembly added, as a requirement for proof of adverse possession, that the claimant prove color of title and payment of taxes on the subject property or contiguous property for seven years. *See* Ark. Code Ann. § 18-11-106. However, if the claimant's rights to the disputed property vested before 1995,

---

[1]The remaining defendant was dismissed prior to trial.

he need not comply with the 1995 statutory change. *Sutton v. Gardner*, 2011 Ark. App. 737, 387 S.W.3d 185. If appellees' rights vested before 1995, as the trial court found, appellees had to prove only the common-law elements of adverse possession: that they had been in possession of the property continuously for more than seven years and that their possession had been visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *Id.* Under common law, our supreme court has recognized that "color of title is not an essential element to a claim of adverse possession if there is actual possession." *O'Neal v. Ellison*, 266 Ark. 702, 705, 587 S.W.2d 580, 581 (1979). Appellants' contention that color of title is necessary for all adverse-possession claims is incorrect.

Appellants next claim that appellees could not have adversely possessed the property because in 1993 appellants granted permission to Mrs. Burleson to stay on the property. Appellants' argument is meritless because it does not attack the trial court's finding that appellees' predecessors in title, the Burlesons, adversely possessed the property since at least 1967. A claimant may tack on the adverse-possession time of an immediate predecessor in title, as appellees have done here. *Smith*, *supra*. A conversation appellants claimed to have had with Mrs. Burleson nearly twenty years after her title had vested by adverse possession does not cast doubt on her title. *See McLaughlin v. Sicard*, 63 Ark. App. 212, 977 S.W.2d 1 (1998). After an individual obtains title to land by adverse possession, his recognition that another may have a claim to the land does not divest title to the land from the adverse possessor nor does this recognition estop the adverse possessor from asserting title. *Id.*

Appellants' argument that appellees had abandoned the subject property since 2005 is

likewise without merit. Adverse possession maintained for the statutory seven-year period vests title in the adverse possessor as completely as would a deed from the holder of record title. *McLaughlin*, *supra*. Title to realty may not be divested by abandonment alone. *Hendrix v. Hendrix*, 256 Ark. 289, 293, 506 S.W.2d 848, 851 (1974). There must be an intent on the part of the owner to relinquish his claim, and this intent must be accompanied by circumstances of estoppel and limitation if the abandonment is not by a legal deed of conveyance. *Id*. The party asserting abandonment bears the burden of proving it by clear, unequivocal, and decisive evidence. *Id*. The trial court was not clearly erroneous in failing to find that appellants proved abandonment merely by their evidence that the condition of the property had deteriorated while no one was living on it.

Appellants next contend that appellees could not prove adverse possession of the mineral estate because appellants had been in actual possession of the subsurface since 2005 by virtue of their oil-and-gas lease. This argument was raised for the first time in appellants' posttrial brief, and the trial court did not rule on it. An issue must be presented to the trial court at the earliest opportunity in order to preserve it for appeal. *Thompson v. Fischer*, 364 Ark. 380, 220 S.W.3d 622 (2005). Where nothing appears in the record reflecting that a particular argument was formulated before the trial court, or that any ruling was given, the appellant has waived review of that issue. *Id*.

Appellants also argue that appellees should be barred by laches or estoppel in establishing adverse possession because they "sat on their rights" to the detriment of appellants. Again, appellants failed to obtain a ruling on this argument. This court will not

consider laches on appeal when the matter was not brought to the attention of the trial court for a ruling. *Higgins v. Higgins*, 2010 Ark. App. 71, 374 S.W.3d 56. We hold that the trial court's finding that appellees had proved the necessary elements of adverse possession was not clearly erroneous, and we affirm the decree quieting title in them.

Appellants also contend that appellees failed to prove boundary by acquiescence because the parties did not recognize a definite fixed boundary and did not mutually agree to such a boundary. Whenever adjoining landowners tacitly accept a fence line or other monument as the visible evidence of their dividing line and apparently consent to that line, it becomes a boundary by acquiescence. *Clark v. Casebier*, 92 Ark. App. 472, 215 S.W.3d 684 (2005). A boundary line by acquiescence is inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of the boundary line. *Id.* The location of a boundary line is a question of fact. *Id.* Although equity cases are reviewed de novo on appeal, we will affirm a trial court's finding of fact with regard to the location of a boundary line unless the finding is clearly erroneous. *Id.*

When the adjoining owners occupy their respective premises up to the line they mutually recognize and acquiesce in as the boundary for a long period of time, they and their grantees are precluded from claiming that the boundary thus recognized and acquiesced in is not the true one, although it may not be. *Clark*, *supra*. Appellees and their witnesses testified that the predecessors in title on both sides had accepted the west fence as the boundary line since the 1950s. As in *Clark*, appellants offered no testimony to contest appellees' evidence that the previous owners of the land had acquiesced in the boundary line. The trial court was



not clearly erroneous in its finding of boundary by acquiescence, and we affirm.

Affirmed.

GLADWIN, C.J., and BROWN, J., agree.

*Thomas Law Firm*, by: *Albert J. Thomas III*, for appellants.

*Terry J. Lynn* and *Robert S. Tscheimer*, for appellees.