

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-15-1052

CARTHEL JACKSON HODGES, SR.,
REVOCABLE TRUST; CARTHEL J.
HODGES, JR., TRUSTEE; and
CARTHEL J. HODGES, JR.,
INDIVIDUALLY

APPELLANTS

V.

GRAVEL HILL CEMETERY
COMMITTEE

APPELLEE

**OPINION DELIVERED** AUGUST 31, 2016

APPEAL FROM THE WHITE
COUNTY CIRCUIT COURT,
[NO. CV-2014-312-3]

HONORABLE CRAIG HANNAH,
JUDGE

AFFIRMED

## ROBERT J. GLADWIN, Chief Judge

Appellants Carthel Jackson Hodges, Sr., Revocable Trust, Carthel J. Hodges, Jr.,

Trustee, and Carthel J. Hodges, Jr., individually, appeal the August 25, 2015 order of the

White County Circuit Court finding that appellee Gravel Hill Cemetery Committee had

proved a boundary line by acquiescence. Appellants argue that appellee failed to establish a

required element of boundary by acquiescence—specifically, that appellee was not proven

to be a landowner of the property in question. Appellants also argue that the trial court erred

in the weight that it afforded to various witnesses' testimony. We affirm.

I. *Facts*

On August 13, 1918, Amos A. Cohorn, trustee for Gravel Hill Cemetery, was

deeded the northern portion of what is now commonly known as Gray Cemetery as

reflected on the sketch plat of the cemetery and appellant Carthel J. Hodges, Jr.'s ("C.J. Hodges") property. The lower seventy yards by seventy yards (or 210 feet by 210 feet) of Gray Cemetery as reflected on the sketch plat was deeded to the public on March 5, 1907.

The public ownership of this area of Gray Cemetery was confirmed by Kenneth Hazelwood, a professional land surveyor who drafted the sketch plat of the cemetery and C.J. Hodges's property, as well as by Barbara Stacy, the secretary/treasurer for appellee. Ms. Stacy testified that the lower half of Gray Cemetery had been deeded to the public, not to Gravel Hill Cemetery, on March 5, 1907. All of the graves in the 0.66-acre L-shaped strip of land ("disputed property") at issue in this case are located in the southwest corner, and those graves adjoin the portion of Gray Cemetery owned by the public.

On August 21, 2014, appellee filed a petition to quiet title and claim of adverse possession against appellants to confirm ownership and quiet title to the disputed property that adjoined, and is contiguous to, Gray Cemetery. The disputed property was owned by appellant Carthel Jackson Hodges, Sr., Revocable Trust—of which appellant C.J. Hodges is the Trustee and sole beneficiary. C.J. Hodges filed his answer to the petition on September 2, 2014.

A final hearing was held on April 30, 2015, after which the trial court entered its judgment granting appellee's petition to quiet title based on the doctrine of boundary by acquiescence. Title was confirmed in favor of appellee for the property lying immediately west of Gray Cemetery to the old fence line and for the property lying immediately south of Gray Cemetery to the existing road. The trial court awarded 0.46 acres to appellee



pursuant to the order entered on August 25, 2015, and a timely notice of appeal was filed on September 24, 2015.

## II. *Standard of Review*

This court reviews quiet-title actions de novo; however, we will not reverse the trial court's findings of fact unless they are clearly erroneous. *Fletcher v. Stewart*, 2015 Ark. App. 105, 456 S.W.3d 378. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.* We give due deference to the trial court's superior position in determining witness credibility and the weight to be accorded their testimony. *Id.* This court does not have to defer to the trial court on a question of law. *Smith v. Smith*, 2011 Ark. App. 598, 385 S.W.3d 902. On a de novo review of a fully developed record, when the appellate court can clearly see where the equities lie, the appellate court may enter the order that the circuit court should have entered. *Peavler v. Bryant*, 2015 Ark. App. 230, 460 S.W.3d 298. According to *Myers v. Yingling*, 372 Ark. 523, 279 S.W.3d 83 (2008), because the location of a boundary is a disputed question of fact, this court will affirm unless the trial court's finding is against the preponderance of the evidence. *See also Evans v. Mobley*, 2011 Ark. App. 278. Whether a boundary line by acquiescence exists is to be determined from the evidence in each individual case. *Id.*

## III. *Applicable Law*

In *Myers*, our supreme court held that "whenever *adjoining landowners* tacitly accept a fence line or other monument as the visible evidence of their dividing line and thus apparently consent to that line, [the line] becomes the boundary by acquiescence." *Myers*,

372 Ark. at 527, 279 S.W.3d at 87 (emphasis added). A boundary line by acquiescence is inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of the boundary line, *see Evans*, *supra*, and in such circumstances, the adjoining owners and their grantees are precluded from claiming that the boundary so recognized and acquiesced in is not the true one. *Myers*, *supra*.

IV.  *Discussion*

A.  Establishment of Adjoining Landowner Element of Boundary by Acquiescence

Appellants initially argue that appellee does not "own" the land that adjoins appellants' land and therefore does not have standing to bring an action to establish a boundary line. We note that this defense was not raised in any of appellants' pleadings and was argued below with respect only to the adverse-possession claim. But the trial court did not base its decision on adverse possession; its decision was founded solely on the establishment of boundary by acquiescence.

At the close of their evidence, appellants' counsel made the following motion:

MR. STREIT:  Your Honor, I do have a motion at this time. Your Honor, at this time, the Defendant would ask for the Court to issue a directed verdict in their favor. The Plaintiffs have brought this petition on two parts, adverse possession and boundary line by acquiescence. With respect to the adverse possession claim, they have not shown a prima facie case. They haven't shown the common law elements of exclusive use. They haven't shown the actual possession. More importantly, they haven't shown the statutory requirements which are specifically color of title and taxes. Now, taxes is a moot issue because graveyards don't pay taxes. But they don't–every witness has testified that the graves are–actually located, that adjoins the area where the deed says it belongs to the public. It does not belong to Gravel Hill Cemetery. It doesn't even belong to Gray Cemetery. It belongs to the public, just as it belongs to me and anyone else. The way the law of adverse possession is clear is that you actually have to have color of title on the property that you

are trying to possess or adjoining property. They don't have either one of those in this situation. I think they're out of gas with regards to the adverse possession claim.

Additionally, they filed a petition to quiet title under adverse possession. Under–to quiet title, you have to publish a notice in the newspaper for four consecutive weeks. Again, there is an exception for adjoining landowners, but we don't have adjoining landowners here. We have the public and we have my client, the Hodges. And then lastly, they did not post a notice on the property, which is required regardless of whether or not you're adjoining landowners or not, and they did not do that. That's in respect to 18-60-508.

With regard to boundary by acquiescence, they have not met their prima facie case in regard to that. There hasn't been any testimony about any kind of tacit agreement that the fence was the boundary line. They've just said that it was the boundary line. Their–can't give any information why my client would bury his father on the east side of the fence if that was the property line. There has to be a boundary, and they haven't shown that was the boundary. They've shown that there's a handful of graves in the southern half of that, but there hasn't been any evidence that said this northern half or the southern half is used in any way by the cemetery. We're asking for a directed verdict.[1]

Appellants argue that appellee failed to establish the requirements for boundary by acquiescence, specifically the requirement that it be an adjoining landowner. Accordingly, they urge that appellee's claim of ownership in the disputed property should have been denied as a matter of law.

The first requirement to establish a claim of boundary by acquiescence is that the claimant be an adjoining landowner. While acknowledging that appellee does have legal title to the northern portion of Gray Cemetery, appellants argue that appellee neither has legal title nor is an adjoining landowner of the southern seventy yards by seventy yards of

---

[1]That motion was denied.

Gray Cemetery, which was deeded to the public. As Ms. Stacy testified, the term "public" would include everyone, herself, opposing counsel, and even the trial court judge. This cause of action was brought by appellee, not by the public. Appellants maintain that appellee does not have standing to bring a petition to quiet title to the portion of the disputed property based on the doctrine of boundary by acquiescence as neither appellee nor Gray Cemetery are the landowner of that section.

Also, appellants submit that appellee did not provide sufficient evidence to establish a tacit understanding or agreement between the public and C.J. Hodges or his predecessors in title that the boundary line was anywhere other than the legal boundary. They maintain that appellee failed to meet the basic requirement to prevail on a boundary-by-acquiescence claim, urging that there can be no tacit acceptance, implied agreement, or inferred understanding between appellee and C.J. Hodges because they are not adjoining landowners.

Appellee responds, asserting that appellants' argument that appellee does not "own" the land that adjoins appellants' land, and therefore does not have standing to bring an action to establish a boundary line, is not preserved for review. Appellee points out that this defense was not raised in any of appellants' pleadings and was only argued below specifically with respect to the adverse-possession claims; essentially, appellants' oral motion for directed verdict was presented in two distinct parts, one made with respect to the adverse-possession claim and the other with respect to the boundary-by-acquiescence claim. Despite appellants' contention that the two theories were presented cumulatively in one continuous motion because the claims share similar elements, we note that the trial court did not base its decision

on adverse possession. Its decision was founded solely upon the establishment of a boundary by acquiescence.

This court will not consider arguments raised for the first time on appeal. *Brown v. Lee*, 2012 Ark. 417, 424 S.W.3d 817. Accordingly, we hold that appellants' argument that appellee did not own the adjoining land was not raised below and therefore, is not preserved for review by this court.

### B. Allocation of Weight Given to Various Testimony Regarding Boundary by Acquiescence

Appellants next argue that the trial court erred in finding appellee's witnesses credible with respect to their testimony regarding the establishment of a boundary by acquiescence. They focus on the various allocations of weight given to the testimony of three specific witnesses: Robin Covington, C.J. Hodges, and Martha Davis.

### 1. *Robin Covington*

In its ruling, the trial court found Robin Covington to be the most credible, competent witness. Mr. Covington testified that he had family members buried on the disputed property and that he had been a part of the maintenance or upkeep of the cemetery for the last fifty years—that maintenance extending to the west up to the fence line.

Appellants note that when pressed for actual details with regard to the maintenance of Gray Cemetery and a T-post placed on the legal boundary line, Mr. Covington could not provide specifics to the trial court. With regard to the maintenance of the property, Mr. Covington testified that it had been a long time since he had actually maintained the property, explaining that he was no longer part of that committee and was retired, and that

SLIP OPINION

if C.J. Hodges had maintained the disputed property he would have no way of knowing because he was no longer on the board. Additionally, Mr. Covington confirmed that there was a T-post located on the southwest corner of the legal boundary line of C.J. Hodges's property. To the best of his recollection, he believed that Carthel J. Hodges, Sr.—C.J. Hodges's father and predecessor in title—placed that T-post on his legal boundary line prior to his death; however, Mr. Covington could give no explanation why the T-post was placed on the southwest corner of the legal boundary line by the legal title holder of the disputed property if everyone had used and recognized the fence line as the actual western boundary line.

Finally, Mr. Covington acknowledged that (1) the graves located on the disputed property were relegated to a small area in the southwest corner of the disputed property; (2) no individuals had been buried in the northern part of the disputed property; and (3) no individuals had been buried in the southern part—south of the road—of the disputed property.

Appellants note that while an express agreement between landowners to treat a fence or road as the boundary line is not required to establish boundary by acquiescence, there must be some mutual recognition or tacit acceptance among the landowners that the fence line or road is being treated like the boundary line. *Chiodini v. Lock*, 2010 Ark. App. 340, 374 S.W.3d 835. They submit that the only thing Mr. Covington could testify to was that the fence line had been there for many years and that, according to his knowledge, Gray Cemetery had maintained the property up to the fence line and the road. He did not provide

any testimony that C.J. Hodges or his father had ever recognized, accepted, or treated the fence line or the road as the boundary line.

## 2. *C.J. Hodges*

C.J. Hodges testified that he had lived at 243 Connie Road in Romance, Arkansas, for ten years, and that he raised cattle on his property and went there every day. He explained that his father, Carthel J. Hodges, Sr., purchased the Connie Road property, which includes the disputed property, in 1996. C.J. Hodges moved to the Connie Road property in 2005 or 2006 while his father was still living.

With respect to the southern portion of the disputed property, C.J. Hodges testified that he had maintained the area of the disputed property between the road and the legal boundary line for at least ten years, including mowing and weedeating. He testified that he had never seen anyone else maintain the area between the road and the legal boundary line.

Regarding the west portion of the disputed property, C.J. Hodges testified that he and his father were aware of the fence when the property was purchased and that they were also aware that the fence was not on the property line. However, he explained that they did not move the fence because it was easier to repair the fence in its existing location. C.J. Hodges stated that even though the fence line had not been moved to the legal boundary line, that either he or his father maintained, by mowing or weedeating, the property directly east of the fence up to their legal boundary line since they had purchased the property.

C.J. Hodges testified consistently with Mr. Covington that (1) the Gray Cemetery graves in the disputed property were confined to a small area in the southwestern corner; (2) there were no graves in the northern portion of the disputed property; and (3) there

9

were no graves in the portion of the disputed property south of the legal boundary line. He explained that those graves extended only 210 feet north of the legal boundary line and adjoined the portion of Gray Cemetery deeded to the public.

C.J. Hodges testified that he had been the only individual to weedeat around the graves and that he had never seen anyone else maintain that area around the graves. Because of the maintenance provided by C.J. Hodges, appellants claim that there is a clear distinction between the disputed property and Gray Cemetery. Gray Cemetery does not keep a maintenance schedule, and C.J. Hodges testified that there have been times, most recently on the day prior to the final hearing, that Gray Cemetery has had grass two feet high.

Appellants note that appellee did not provide any evidence to rebut the testimony of C.J. Hodges. No individuals who had actually maintained the property testified, and no individual, including Ms. Stacy, testified as to records memorializing when the cemetery was maintained, who performed the work, and how much that individual was paid. It was undisputed that C.J. Hodges resides on the property directly west of the L-shaped disputed property, raises cattle on his property, and is there every day. Accordingly, appellants urge that the trial court erred in the minimal weight it afforded to C.J. Hodges's unrebutted testimony.

### 3. *Martha Davis*

Martha Davis testified that she resided in Heber Springs, Arkansas, and had several family members buried at Gray Cemetery, including her mother, her father, her two brothers, and her husband. Prior to her husband's death in 2009, Mr. and Mrs. Davis went to Gray Cemetery to pick out their burial plots. However, when Mr. Davis passed away,

Ms. Davis testified that neither she nor her son could locate the area they had previously chosen; therefore, Ms. Davis picked another plot that was located on the disputed property.

Ms. Davis testified that her husband's funeral took place without incident, following which she met C.J. Hodges. He explained to Ms. Davis at the time that her husband had in fact been buried on his property but gave her assurances that it would not be a problem if she wanted to be buried by her husband.

Ms. Davis testified that she often went to her husband's grave after his death. She explained that she would go right up to his grave without any issue, that the area around his grave was always well maintained, that the grass around the cemetery was higher, and that the two areas were not equivalently maintained.

Appellants submit that Ms. Davis is an uninterested party who merely testified as to her personal experiences and observations. Appellants maintain that her testimony directly rebuts appellee's position that it had always maintained the cemetery to the fence on the western boundary and, more important, rebuts testimony that there was a recognized or tacit agreement that the fence was the western boundary of the cemetery—instead reinforcing that C.J. Hodges maintained his property up to the legal boundary line. As such, appellants insist that the trial court erred in the minimal weight given to Martha Davis's testimony.

Appellee responds, disagreeing with appellants' second argument that the trial court erred in finding appellee's witnesses credible and should have instead believed their witnesses. In *Whitecotton v. Owen*, 2016 Ark. App. 120, 487 S.W.3d 380, this court reiterated that whether a boundary line by acquiescence exists is to be determined from the evidence

in each case. It is the duty of the trial court to weigh the evidence and the credibility of the witnesses in each case. *See Young v. Robertson*, 2015 Ark. App. 681, 476 S.W.3d 856. We hold that this is what the trial court did in this case, specifically finding credible the testimony that the fence line is the boundary line. While appellants complain that appellee's witnesses' "credibility is highly suspect," this court must give due deference to the trial court's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Nix v. Owen*, 2009 Ark. App. 756. As such, this argument does not present a valid basis for reversal.

Appellee provided testimony from Barbara Stacy, the current secretary/treasurer of appellee; Carlton Stacy, current president of the committee; Mr. Covington; and Darrell Barnett, who testified that since at least 1980, there had not been a time that the cemetery was not taken care of in a "less than neat appearance." All of appellee's witnesses agreed that long before appellants acquired title everyone acknowledged the fence line as the boundary between the respective property owners. All of the witnesses gave the same account of what had transpired. Appellee contends that this is why the trial court found appellee's version of the facts to be credible and compelling.

The trial court announced these findings of fact from the bench:

Okay. Based upon the pleadings and the evidence presented, I make the following findings of fact: since 1907, in some shape, form, or manner, there has been a cemetery in existence in the area that we've been talking about this afternoon. In 1930, there was another deed granting some more property to the cemetery. In some shape, form, or manner, some entity has maintained that up and through the Gravel Hill Cemetery Committee who now maintains it. There is evidence of a checking account in existence for at least thirty or forty years. And from direct testimony from people in court today, the cemetery was maintained for at least forty or fifty years, as far back as they can remember.

12

There's also testimony and [I am] finding that there's a fence in existence along the west boundary and the south boundary for in excess of fifty years. I also make a specific finding that the road that runs along the east part—east and south of the property has been used by people gaining access to the cemetery for at least fifty years. That road is also used by Mr. Hodges and prior owners to get to his property. There's some question as to how much of that road is a county road and how much of that road is private road. From all the testimony that I heard probably the most credible and competent witness was Mr. Covington. And based upon—well, the cemetery committee and its predecessors maintained the cemetery property up to the fence lines – up to the west fence line and up to the south—the road that borders south, they maintained that for a period of in excess of fifty years. And based upon those findings, I find they've established a boundary by acquiescence on the old fence line on the west boundary and south boundary by the road.

Examining the testimony and other evidence as presented and applying the appropriate standard of review, we hold that the trial court, upon making credibility decisions within its discretion, did not err in determining that the fence line that has been the boundary by acquiescence for many years should be declared to be the legal boundary for all purposes. Accordingly, we affirm.

Affirmed.

HOOFMAN and BROWN, JJ., agree.

*Lightle, Raney, Streit & Streit, LLP*, by: *Susannah R. Streit*, for appellants.

*D. Paul Petty*, for appellee.