
# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-16-911

| | |
|---|---|
| BOB E. CLARK AND BUNEVA C. CLARK<br><br>APPELLANTS<br><br>V.<br><br>N.A. CAUGHRON<br><br>APPELLEE | **Opinion Delivered:** August 30, 2017<br><br>APPEAL FROM THE VAN BUREN COUNTY CIRCUIT COURT<br>[NO. 71CV-13-57]<br><br>HONORABLE MIKE MURPHY, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

This appeal involves a boundary-line dispute. Bob Clark runs a cattle-farming operation over 411.5 acres of land, part of which is subject to this dispute. Clark originally acquired 120 acres from David Maness that were landlocked, and so Clark asked his neighbor, N.A. Caughron, for a right-of-way to get to the landlocked property. Caughron declined. Later, Clark sued Caughron to quiet title for the encroaching fence line and for unlawfully removing timber belonging to Clark. Caughron counterclaimed, asserting that the fence line established the boundary by acquiescence, or alternatively by adverse possession. After a bench trial, the circuit court found in favor of Caughron and held that "by acquiescence and open and notorious possession for a period in excess of seven years that the parties' boundaries in the areas in dispute should be fixed by the old fences." For

the following reasons, we affirm.

Clark filed a timely notice of appeal, raising the following points: (1) the circuit court erred in finding the fence line was a boundary by acquiescence, and (2) the circuit court erred in its alternative finding of adverse possession. This court reviews boundary-line cases de novo. *Teague v. Canfield*, 2014 Ark. App. 712; *Stadler v. Warren*, 2012 Ark. App. 65, 389 S.W.3d 5. But we will not reverse the circuit court's findings of fact unless they are clearly erroneous. *Fletcher v. Stewart*, 2015 Ark. App. 105, 456 S.W.3d 378. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite conviction that a mistake was committed. *Id*. In reviewing a circuit court's findings of fact, we give due deference to its superior position in determining witness credibility and the weight to be accorded their testimony. *Id*. However, this court does not defer to the circuit court on a question of law. *Smith v. Smith*, 2011 Ark. App. 598, 385 S.W.3d 902. Because the location of a boundary is a disputed question of fact, we will affirm the circuit court's finding unless it is clearly against the preponderance of the evidence. *Reynolds v. GFM, LLC*, 2013 Ark. App. 484, 429 S.W.3d 336.

Using these standards, we examine the facts presented to the circuit court. Clark indicated that initially he bought 120 acres of landlocked land from David Maness. After Clark's neighbor, N.A. Caughron, had declined his request for a right-of-way to get to the landlocked property, Clark approached another neighbor, Anton Simon. Simon also declined to give Clark a right-of-way over his land, but he offered to sell 291.5 acres of his land that joined Clark's property. After assembling the contiguous parcels, Clark discovered an easement through a church and adjacent cemetery. He then contacted the county judge,

who commissioned a survey by Eddie Wheeler. Wheeler's survey indicated that the fence line between Clark's and Caughron's land was encroaching 15 to 18 feet onto Clark's land.

Clark subsequently contacted Billy Caughron ("Billy"), who is N.A.'s son and his agent by virtue of power of attorney. Billy told Clark, "Don't cut my fence." Clark agreed and then obtained the survey for the Simon land, which had previously been performed, and he and Billy walked the property together. On that walk, the two encountered a pile of stones with blue paint that Billy indicated was the corner of the property as reflected on the Reinold survey in 1982. Clark then painted the rock pile red.

Later, Clark commissioned a new survey from Lane Housely. Housely found that Caughron's fence was encroaching on Clark's land about 300 feet where it met the Simon land and almost 600 feet where it met the Maness land. Clark asked Billy to split the cost of a survey to establish their true boundary; Billy declined. Clark then commissioned Housely to survey both the Simon and Maness properties. Housley could not find the corner markers referenced in the Reinold survey. Clark, Billy, and the Housley team met to discuss the findings, and Billy insisted the corners were different than the survey findings. No pin could be found, however, and the stone markers had disappeared.

Clark then sued Caughron to quiet title for the encroaching fence line and for unlawfully removing timber belonging to Clark. Caughron then counterclaimed, claiming the fence line established the boundary by acquiescence, or alternatively, by adverse possession. On appeal, Caughron also objected to Clark's statement of the case, which is recounted above, and added several points that were presented to the circuit court but were omitted from Clark's recitation of the facts. First, Caughron points out that he had built the

fences that have been in place for over 50 years on the southern boundary of the property and nearly 45 years on his western boundary. Furthermore, neither of the two previous contiguous landowners had ever disputed the location of the fences representing the boundaries. Caughron and Simon (who is Clark's predecessor in title to the west) had an agreement that Caughron's western boundary line would be where it is presently located. Furthermore, Simon and Caughron both contributed to the financial cost of building the fence pursuant to a survey to memorialize it.

Caughron notes that Clark purchased the property on both the west side and the south side of Caughron's land without getting a survey or speaking with him prior to the purchase on either occasion. Caughron also points out that Clark did not file the action objecting to the location of the fences until seven years after the purchase of the two properties bordering his land. At trial, six people testified that since the 1970s, they had visited, been on, and hunted on Caughron's property and that they were not aware of anyone having ever challenged him on the ownership or right to possession of the land. Nor had they seen any evidence of the fences having been moved during their period of exposure to the land. All of the witnesses had visited the land again just before trial and testified that there had been no changes in the fences or the boundary lines since they had been on it the last time. None of their testimony was rebutted or challenged by Clark.

Finally, Caughron testified that he had "brushhogged" the pastureland in question, had selectively sprayed trees with herbicide, had logged it, had run cattle on it, had built ponds on it, had fertilized the pastureland, and had maintained and repaired the fences.

Clark's first point on appeal is that the circuit court erred by finding a boundary by acquiescence. In *Myers v. Yingling*, 372 Ark. 523, 527, 279 S.W.3d 83, 87 (2008), our supreme court held that "whenever *adjoining landowners* tacitly accept a fence line or other monument as the visible evidence of their dividing line and thus apparently consent to that line, [the line] becomes the boundary by acquiescence." *Myers*, 372 Ark. at 527, 279 S.W.3d at 87 (emphasis added). A boundary line by acquiescence is inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of the boundary line, and in such circumstances, the adjoining owners and their grantees are precluded from claiming that the boundary so recognized and acquiesced is not the true one. *Id.*

Here, the circuit court did not err by finding a boundary by acquiescence. The circuit court was correct in finding that both Caughron's southern line and western line were established by acquiescence. The southern line was created when a predecessor in title to David Maness, the Clarks' own immediate predecessor in title, owned the property in the 1950s and before there was any fencing marking the line between them, pointed out to Caughron where the line separating their properties should be located. The western line was created when Simon made an agreement with Caughron to build the fence on the surveyed line between them. Clark's argument that Caughron "committed fraud when he fenced the area at the prior owner's request" is not supported by the evidence. The unrebutted testimony reflects that the Clarks' predecessor, Simon, and Caughron, had an agreement as to where the fence should be built—on the blaze line created by surveyor Robert Smith's crew.

The circuit court concluded that the fence, was in fact, built on that blazed line; and that the Clarks' predecessor in title, Simon, inspected the fence line immediately after it had been completed and annually or semiannually thereafter for about 25 to 30 years. The circuit court also concluded that Simon never had anything to say about the fence or its location except that he was pleased with it. As such, we hold that the circuit court's decision on this boundary was not clearly erroneous.

We further do not agree with Clark's second argument that the circuit court erred in its alternative finding of adverse possession. In order to prove ownership of land by adverse possession, the party claiming possession must show continuous possession of the property for seven years. *Robertson v. Lees*, 87 Ark. App. 172, 183, 189 S.W.3d 463, 471 (2004). The claimant must also prove that possession was actual, open, notorious, continuous, hostile, exclusive, and accompanied by an intent to hold against the true owner. *Washington v. Washington*, 2013 Ark. App. 54, at 6, 425 S.W.3d 858, 862. Clark argues that Caughron did not hold and possess the land against, and in contravention of, the rights of Clark and his predecessors in title. The circuit court did not find merit in this argument. The court held that Caughron owned the disputed property by adverse possession. We agree because there was no testimony presented about possession except for the unrebutted testimony that Caughron acted as any landowner would act in using his own land.

Clark himself shows that he did not regard Caughron's occupancy and ownership of the land to be permissive when Clark testified that he asked Caughron's permission to cross his land. In *Rabjohn v. Ashcraft*, 252 Ark. 565, 480 S.W.2d 138 (1972), our supreme court held that the landowners' agreement can be parol only and need not even be expressed but

6

SLIP OPINION

can be inferred from long, continued acquiescence of the owners plus occupation to the line. These are the very facts that were before the circuit court here.

A common theme throughout Clark's brief is that the fences complained of were either constructed fraudulently or fraudulently maintained, or both. There is no proof to support this assertion. Accordingly, we do not address it further. We cannot say the circuit court's decision was clearly erroneous; therefore, we affirm.

Affirmed.

GRUBER, C.J., and HARRISON, J., agree.

*Cullen & Co., PLLC*, by: *Tim J. Cullen*, for appellants.

*Jon R. Sanford, P.A.*, by: *Jon R. Sanford*, for appellee.