
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-17-151

| | |
|---|---|
| STACY DON RIDER AND PAM RIDER | Opinion Delivered: September 13, 2017 |
| APPELLANTS | APPEAL FROM THE STONE COUNTY CIRCUIT COURT |
| V. | [NO. 69CV-10-22] |
| | HONORABLE TIM WEAVER, JUDGE |
| LONGBOW RANCH, LLC | |
| APPELLEE | AFFIRMED |

**DAVID M. GLOVER, Judge**

Stacy and Pam Rider appeal the Stone County Circuit Court's order quieting title to disputed property in appellee Longbow Ranch, LLC ("Longbow").[1] The Riders argue the circuit court erred in finding Longbow proved adverse possession. We affirm.

Longbow owns adjacent property directly south and east of the Rider property. At issue in this appeal is an approximately 4.15-acre strip of land extending across the south side and continuing up the eastern side of the Rider property (the "disputed property"). The disputed property has been fenced in with the Longbow property since at least 1966. In 2007, the Riders erected a new fence on what they considered to be the proper boundary line between the two properties. Longbow filed suit, alleging title to the disputed property

---

[1]This case was previously appealed but was dismissed on motion of appellants by this court because the order initially appealed from was not a final, appealable order. *See Rider v. Longbow Ranch, LLC*, CV-16-638. The issue of finality has been resolved, and appellants have filed a timely appeal from the final order in this case.

should be quieted in it by either adverse possession or acquiescence; asserting the Riders had violated Arkansas Code Annotated sections 18-60-102 and 15-32-301; contending the Riders had trespassed on its property to erect the new fence; and requesting that the Riders be ejected from the disputed property and possession be restored to Longbow. In an order filed on November 9, 2015, the circuit court granted partial summary judgment to Longbow on the issue of trespass.[2] After trial, the circuit court issued an order on March 22, 2016, quieting title to the disputed property in Longbow by adverse possession and ordering the Riders to remove the fence they constructed. On January 11, 2017, an order dismissing all remaining claims with prejudice was entered, and the Riders filed a timely appeal.

*Standard of Review*

Equity cases are reviewed by this court de novo on the record; findings of fact by the trial court will not be reversed unless clearly erroneous. *Muldrew v. Duckett*, 2013 Ark. App. 304. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Fletcher v. Stewart*, 2015 Ark. App. 105, 456 S.W.3d 378. It is within the province of the finder of fact to resolve conflicting evidence and to determine witness credibility; the trial court's superior position to make these determinations is given due deference on appeal. *Muldrew, supra.*

*Hearing Testimony*

At trial, Ben Pearson, Jr. (Pearson), testified his father, Ben Pearson, Sr., purchased what would become the Longbow property in 1966; this property was transferred to a trust

---

[2]The Riders have not appealed this order.

at Pearson, Sr.'s, death; the estate transferred the property to Pearson and his sister; his sister and her husband transferred the property to Pearson; and Pearson and his wife transferred the property to Longbow Ranch, LLC. Pearson testified his father immediately created a cattle-and-horse farm after purchasing the property; cleared pastures with bulldozers; built fences; erected barns; built an L-shaped cattle corral against the fence in 1966, which was used to offload cattle into the pasture; and also built a pond in 1967. According to Pearson, his father remained in the cattle business, with the help of a manager, until his death in March 1971, after which the estate continued the cattle operation with the assistance of the cattle manager. Pearson testified the estate leased the property, including the disputed property, to Bill Davis from 1978 until 1987; the land, including the disputed property, was then subsequently leased to Ted Verser and Dennis Knapp; Hughie Bradley and Mike Knapp; Tim Kocher; and Steve Carlton, who was currently leasing the property. Pearson stated that all leases required the lessees to maintain the fence so the cattle would not get out. Pearson used pictures of the fence to point out the several different kinds of wires in the fence and the fact that some of the wire had grown into the trees. Pearson testified his family moved to Longbow permanently in October 1993, and he had been in complete possession of the property up to the fence since that time.

Pearson acknowledged that in 2007 he was interested in obtaining an easement from Stacy Rider to allow him to cut timber on his property; it was at that time Rider first raised the question of the proper boundary line. Pearson testified he told Rider the land had been in his family's possession for forty-five years, and it was his understanding that after seven years, there was not a problem with ownership. Pearson said he proposed a land trade or

"something," but he never heard back from Rider; however, a new fence suddenly appeared, and Longbow filed this lawsuit. Pearson denied he ever agreed that Rider's proposed boundary line was correct. Pearson testified no one other than Longbow and its predecessors and tenants had been in possession of any property south of the original fence, and no one from the north side of the fence had ever fixed the fence, bush-hogged the property, or fertilized the pasture.

Steve Carlton, the current Longbow lessee, testified he and Tim Kocher were both required under their leases to keep the fences repaired so the cattle would not get out. Carlton said when Kocher quit leasing the northern part of the property (which contained the disputed property), he took over that lease and had been leasing the entire property for the last ten years. Carlton stated that, during that time period, he had taken care of the fence on the northern part of the property, checking at least every two years to ensure the fences were all up; he had also spread litter several times for both Kocher and himself, and he was never told by the Riders to stay off their property. He also said he never saw the Riders repairing the fence.

Dennis Knapp testified he worked for Bill Davis when Davis leased the Longbow property, and he and his father had also leased the property. He said the fence had been in existence since he hunted on the land as a boy—for around fifty years. Knapp said when he worked for Davis and when he and his father leased the land, they were required to keep the fence repaired to keep the cattle in. Knapp said Stacy Rider never told him he owned any of the land south of the fence; other than the Pearsons, Knapp knew of no one who claimed to own any of the land south of the fence.

Stacy Rider's mother, Susan Phillips, testified the disputed property had been in her family since 1926, when her grandfather purchased the land; the land was transferred to her parents, and in 1973, Phillips's parents deeded five acres to her, which abutted the northern line of the Longbow property, and she sold that land to her son, Stacy Rider, and his wife Pam. Phillips testified her cousin sold Stacy Rider twenty additional acres that also joined the old fence line. Phillips testified that since 1973 to the present, no one had asserted they owned any of the five acres she sold to Stacy. Phillips claimed the old fence was put up as a containment fence to keep horses and cattle in; it was never intended to establish a boundary line. However, Phillips admitted on cross-examination she never told the Pearsons either orally or in writing that the fence was not the boundary and that she owned some of the land on the southern side of the fence. She admitted she had never taken possession of any of the property on the south side of the fence and had done nothing to clear the land on the southern side of the fence. On redirect examination, Phillips testified she occupied the property up to the fence by allowing her horses to run on the property. She claimed she took care of the fence on her side and allowed her horses to run on the property, and the folks on the other side of the fence took care of their property and let their cattle run on it. However, she denied that anyone other than her repaired the fence.

Lance Rider, Stacy Rider's brother, testified he and Stacy met with Pearson and pointed out the boundary lines of the properties, and Pearson agreed to where the property points were located. Lance said that a few weeks later Pearson sent a letter proposing a land swap so Pearson could gain access to log his property. Lance said he did not respond to the

proposal and instead began building the fence.[3] Lance stated the old fence contained cattle, horses, and donkeys on his side of the property, and it contained cattle on the land south of the old fence on the Pearson property; but it was not a boundary fence to his knowledge. Lance admitted that sometimes the south side of the fence was bush-hogged by the Pearsons or their tenants; that the cattle on the Pearson property would have been able to graze up to the old fence line; and while he had bush-hogged the disputed property after the new fence had been erected, he had not done so before. However, he claimed that any work performed on the old fence was done by him or his mother. Lance further admitted he knew Steve Carlton had put chicken litter out in the pasture on the disputed property; he had not paid him for the litter or told him not to do it; and he knew Carlton and Kocher were running cattle on the land.

Stacy Rider's testimony concerning the land-swap proposal was the same as Lance's testimony. Stacy said he never agreed the old fence row should be the boundary. He admitted he had never bush-hogged the land south of the fence or run any cattle on it. He testified that, when he purchased the five acres from his mother, Phillips told him that the fence was not on the property line, that part of his land was "out in the field." He further admitted that he did nothing about the property line until 2007, when he built the new fence.

---

[3]Lance Rider was dismissed as a party defendant in the March 22, 2016 order quieting title in Longbow, as it was determined at the hearing in November 2015 that he claimed no interest in the disputed property.

*Adverse Possession*

Adverse possession is governed by both common law and statute. The common–law elements of adverse possession require a claimant to show he has been in possession of the property in question continuously for more than seven years, and his possession has been visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. *Muldrew, supra*. Whether possession was adverse to the true owner is a question of fact; proof that the claimant's acts of ownership are of such a nature as one would exercise over his own property and would not exercise over the land of another is ordinarily sufficient proof of adverse possession. *Muldrew, supra*. In 1995, the General Assembly added a statutory requirement[4] for proof of adverse possession that the claimant prove color of title and payment of taxes on the subject property or contiguous property for a period of seven years; however, if the claimant's rights to the disputed property vested prior to 1995, he need not comply with the statutory change. *Fletcher, supra*.

The Riders' argument on appeal focuses on only two requirements of adverse possession: actual and continuous. They contend that Longbow's possession failed to meet both of these requirements. The Riders argue Longbow's use of the disputed property was not continuous for seven years because Longbow failed to identify how frequently the cattle were on the disputed property, which comprised less than one percent of the property Longbow claimed was used for cattle. They further contend there was no testimony about how often the disputed land was cleared or how often the fence was repaired. The Riders further contend Longbow's use failed to rise to the level of actual possession because the

---

[4]Ark. Code Ann. § 18–11–106 (Repl. 2015).

evidence showed there was only sporadic use of the land, and the fence was considered a convenience fence rather than a boundary line.

We cannot agree with the Riders' assertions. The disputed property has been fenced in with the Longbow property since at least 1966, when Pearson, Sr., purchased it and immediately established a cattle-and-horse operation, which has been operated continuously since that time under various lessees. The old fence has several different types of wire, and some of the wire has grown through the tree trunks. While the testimony was disputed as to who repaired the fence over the years, it was the circuit court's responsibility to determine the credibility of that testimony.

Fencing a disputed area is an act of ownership evidencing adverse possession; the fact a fence may be degraded does not necessarily mean the area is no longer "enclosed"; rather, the question is whether the enclosure is sufficient to "fly the flag" over the land and give notice to the true owner the land is being claimed adversely. *Steele v. Blankenship*, 2010 Ark. App. 86, at 13, 377 S.W.3d 293, 300. "Where a landowner is under a belief that he owns certain lands enclosed with his own lands and he exercises dominion over a portion of the enclosed lands adversely to the record owner for the required statutory period of time (seven years) such constitutes an investiture of title to the entire tract." *Id*. at 13–14, 377 S.W.3d at 300 (citing *Kieffer v. Williams*, 240 Ark. 514, 517, 400 S.W.2d 485, 487 (1966)).

Here, there was evidence the fence had been in place since at least 1966; cattle had been run on the enclosed property since that time; Phillips never told anyone she owned the land on the south side of the fence and never attempted to take possession of the disputed property; and while the Riders knew that the fence was not on the property line, having

been given this information by Phillips when they purchased the property from her in 1995, they said nothing until 2007. This was well after the seven-year period for adverse possession, as that was established at least in the mid-1970s. This evidence was sufficient to "fly the flag" that the enclosed disputed property was being claimed adversely. The circuit court's decision to quiet title to the disputed property in Longbow under the theory of adverse possession was not clearly erroneous.

The Riders also point to the fact that Pearson offered a land swap as evidence that he knew Longbow did not own the property. However, after title to land is obtained by adverse possession, recognition that another may have a claim to the land does not divest title to the land from the adverse possessor or estop the adverse possessor from asserting title; adverse possession maintained for the statutory seven-year period vests title in the adverse possessor as completely as would a deed from the holder of record title. *Fletcher v. Stewart*, *supra*. Therefore, any proposed 2007 land swap cannot act to defeat Longbow's assertion of title by adverse possession, as the seven-year period had long run by that time.

*Failure to Prove Pedal Possession of Entire Tract*

Under this point, the Riders assert that even if Longbow adversely possessed some of the disputed property, it failed to prove it had pedal (actual) possession of the entire tract. This issue was never raised to the circuit court. This court will not consider arguments raised for the first time on appeal. *Hodges v. Gravel Hill Cemetery Comm.*, 2016 Ark. App. 360, 498 S.W.3d 746. The Riders contend that sufficiency of the evidence does not have to be raised to preserve it for appeal. However, the Riders' argument below was that none of the disputed property belonged to Longbow under a theory of adverse possession, not

just a portion of the disputed property. The circuit court was never given an opportunity to rule on this issue because it was never raised by the Riders. Nevertheless, as discussed above, the circuit court's decision was not clearly erroneous.

Affirmed.

WHITEAKER and HIXSON, JJ., agree.

*George Carder, P.A.*, by: *George Carder*; and *Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellants.

*Blair & Stroud*, by: *Robert D. Stroud* and *Barrett S. Moore*, for appellee.