Betty Sue Budd DILLAHA et al *v.*
Henry Gresham TEMPLE, Jr. and
Mollie Jo TEMPLE

CA 79-153                                            590 S.W. 2d 331

Opinion delivered November 28, 1979
Released for publication December 19, 1979

*Autrey, Weisenberger, Lingo, & Johnson,* for appellants.

*Smith, Stroud, McClerkin, Dunn & Nutter,* for appellees.

M. STEELE HAYS, Judge. This case involves conflicting claims of certain real property along the Red River in Little River County, Arkansas. The dispute is between Mr. and Mrs. Temple, the appellees, and the successors in interest of Mr. Kelly Budd, the appellants.

Kelly Budd bought his farm along the Red River in 1951. The property was west of the river which ran along a high bank fence but subsequently the river moved to the east, creating accretions to the property of both Kelly Budd and the Temples. The Temples did not reside on their property but had leased their farmland during this time (from the early 1950's through 1977).

The property in dispute was controlled exclusively by the Budd family. Many of their farming activities were carried out on the property in dispute, i.e., building roads, erecting fences, and running cattle on the property.

Mr. Budd died in 1970, but the property continued to be exclusively controlled by his heirs. On January 30, 1978, the

Budd family filed a complaint in equity to quiet title to the disputed area in their name. The trial court found that although the disputed property was in the exclusive control of the Budd family and had been since the early 1950's, the appellant's claim of ownership by adverse possession was without merit because Mr. Budd had acknowledged the Temple's interest in the property and therefore lacked the required element of hostility for a valid claim of adverse possession. The appellants bring this appeal from the judgment.

The appellants allege three points for reversal, but, for purposes of this opinion, they may be combined into a single question. The central issue raised by this appeal is whether the appellants have acquired title to the disputed property through adverse possession. We concur in the trial court's decision on the issue and therefore hold that title did not vest in the appellants.

It is well settled that in order to acquire title by adverse possession, the possession must be hostile and adverse. *Utley* v. *Ruff,* 255 Ark. 824, 502 S.W. 2d 629 (1973); *Arkansas Commemorative Commission* v. *Little Rock,* 227 Ark. 1085, 303 S.W. 2d 569 (1957). If the possession is in subordination to the rights of the true owner, whenever asserted, then the statute of limitations will not begin to run. *Bayles* v. *Dougherty,* 77 Ark. 201, 91 S.W. 304 (1905).

3 Am. Jur. 2d *Adverse Possession* § 32 (1962) states:

> While occupancy of the premises, the payment of taxes, and the making of improvements are circumstances favorable to the claim of adverse possession, they do not in and of themselves establish title by adverse possession; in addition there must be a hostile title or claim. Thus title is not to be overcome by evidence of entry and occupation alone, but the hostile intent must be clearly demonstrated.

In a claim of adverse possession, the intention is the controlling factor. *Arkansas Commemorative Commission, supra.* The intention to hold must be clear, distinct and unequivocal.

In the instant case, there was testimony at trial which indicated that Mr. Kelly Budd had once told his son that he recognized some interest of the Temples in the disputed property. This occurred one afternoon when Kelly Budd and his son were walking along the high bank fence and Mr. Budd told his son that the Temples had some interest in the land above the area where they were standing, pointing in a southeasterly direction.

In *Sloan* v. *Ayres,* 209 Ark. 119, 189 S.W. 2d 653 (1945), a case with a similar fact situation, the plaintiff brought an ejectment action to determine ownership of approximately five acres of land which accreted to the west bank of the Little River. The defendant was an adjoining riparian landowner who had been in exclusive possession of the land. However, the plaintiff attacked his claim of adverse possession by offering evidence of a letter to him from the defendant which stated he would be glad to cooperate with the plaintiff as to boundary lines, roads, etc. This letter was written in response to a request by the plaintiff to leave open a road which the defendant was about to close. The jury returned a verdict for the defendant and plaintiff appealed. The Arkansas Supreme Court upheld the jury verdict, stating that the letter was not a conclusive admission. Such evidence is admissible on the question of whether claimant's possession was in fact hostile, but it is for the jury to consider along with all the other facts and circumstances. [See also *Shirey* v. *Whitlow,* 80 Ark. 444, 97 S.W. 444 (1906).]

Similarly, in *Sanders* v. *Baker,* 217 Ark. 521, 231 S.W. 2d 106 (1950), plaintiff brought an action to quiet title to a strip of land and to cancel a deed to the land in possession of the defendants. Plaintiff asserted ownership of the property in question by adverse possession. He had title to four lots which he had purchased. The disputed property concerns two other adjoining lots. The chancellor dismissed the complaint, stating that although he had told friends that he owned all the land, other testimony revealed that he had made an effort to purchase the disputed property from the defendant. On appeal, plaintiff contended that title by adverse possession had already vested when these negotiations took place. Hence, title could not be divested out of the plaintiff by

admission of a better title. *Stroud* v. *Snow,* 186 Ark. 550, 54 S.W. 2d 693 (1932).

The Arkansas Supreme Court rejected this argument, stating that although such testimony is inadmissible for the purpose of divesting title out of the adverse occupant, it is admissible for the purpose of showing that possession was not adverse. Hence, the court held that in light of this testimony, the chancellor's findings were not against the preponderance of the evidence.

In the case before us, the testimony of Joe Kelley Budd indicated that both he and his father had recognized the Temples' interest in the disputed property. It is clear from the cases cited above that mere possession is not enough to sustain a claim of adverse possession. Possession will not ordinarily be presumed to be adverse, but rather subservient to the true owner. Hence, there is every presumption that such possession is in subordination to the legal title. 3 Am. Jur. 2d *Adverse Possession* § 34 (1962). The intention to hold adversely must be clear, distinct and unequivocal. We believe the chancellor could reasonably find that this testimony was an indication that Mr. Budd lacked the hostile intent.

Although there was testimony that one of Mr. Budd's employees had once ''run-off'' some surveyors sent by Mr. Temple; Mr. Temple also testified that, subsquently, in telephone conversation between Mr. Budd and him, Mr. Budd had reaffirmed that they would work out their boundary line. This evidence again indicates a lack of hostile intent.

One other point should be mentioned. It is claimed by the appellants that if not the entire tract of the disputed property is determined to have been adversely possessed, then all of the property south of their north accretion line should be held to have been in adverse possession by the appellants. However, we find no substantial evidence on which to base this claim of adverse possession for a portion of the disputed property. We believe the chancellor's division of the land was reasonable under the facts and the applicable law of · accretions. Moreover, Kelly Budd's statements, both to his son and to·Mr. Temple, indicated that

he recognized the Temples' interest in the property. Hence, the chancellor's decision to divide the property according to its true boundary lines was not against a preponderance of the evidence.

Therefore, we affirm the decision of the lower court.