Floyd H. FULKERSON *v.* Sylvester VAN BUREN, et al.

CA 97-176                                        961 S.W.2d 780

Court of Appeals of Arkansas
Divisions II and III
Opinion delivered February 11, 1998

[Petition for rehearing denied March 18, 1998.*]

---

* STROUD and MEADS, JJ., would grant.

*Hankins, Hicks, Madden & Blackwood,* by: *Stuart W. Hankins,* for appellant.

*Montgomery, Adams & Wyatt, PLC,* by: *James W. Wyatt,* for appellees.

JOHN E. JENNINGS, Judge. Appellant Floyd H. Fulkerson appeals the Pulaski County Circuit Court's judgment awarding title to a 4.5-acre parcel of real estate to appellee the Progressive Church, Inc. The church claimed title to the land by adverse possession. We reverse and remand.

The 4.5 acres at issue are situated in Pulaski County, near the town of Scott. The parcel is irregularly configured and has eleven sides. The northernmost part of the parcel abuts Old Highway 30 for approximately 115 feet. A single-story church building is situated near the highway. This building is the meeting place for appellee, the Progressive Church, Inc. When the litigation between the parties began, appellant Fulkerson had held legal title

to the parcel since December 1949. Sometime in 1985, the congregation of the Progressive Church, without obtaining permission from Fulkerson, began using the church building on the property as their place of worship. Over the next several years, the congregation greatly improved the church building itself and the surrounding land. Sometime in 1990, appellant Fulkerson began to negotiate with appellee Sylvester Van Buren, the pastor of the church, to reach an agreement whereby the church would lease the parcel from Fulkerson. Fulkerson and Reverend Van Buren were unable to negotiate a lease.

In November 1994, Fulkerson sent to Reverend Van Buren a letter demanding that he and the church congregation immediately vacate the church building located on the parcel. The church did not vacate the premises. In May 1995, Fulkerson filed in Pulaski County Circuit Court a complaint in which he requested that the court eject the congregation from the church building and from the rest of the parcel at issue. Subsequently, appellant Fulkerson filed an amended complaint, naming as a defendant not only Reverend Van Buren but also the Progressive Church, Inc., in which he repeated his request for ejectment of the Progressive Church congregation from the parcel at issue. Reverend Van Buren and the church filed a response to Fulkerson's amended complaint in which they requested that Fulkerson's complaint be dismissed. Filed with this response was a counterclaim brought by the Progressive Church, Inc. In this counterclaim, the church asserted that it owned the parcel of land at issue by adverse possession and requested that the matter be transferred to chancery court to quiet title to the land after recognition of its ownership of the parcel. In October 1996, trial was held in Pulaski County Circuit Court in connection with Fulkerson's complaint and the church's counterclaim. After hearing testimony from witnesses presented by both parties, the circuit court subsequently caused to be entered a judgment in which the court determined that the Progressive Church owned the parcel of land by adverse possession.

The legal principles governing establishment of title to land by adverse possession are well established. We recently set forth these principles as follows:

It is well settled that, in order to establish title by adverse possession, appellee had the burden of proving that she had been in possession of the property continuously for more than seven years and that her possession was visible, notorious, distinct, exclusive, hostile, and with intent to hold against the true owner. The proof required as to the extent of possession and dominion may vary according to the location and character of the land. It is ordinarily sufficient that the acts of ownership are of such a nature as one would exercise over her own property and would not exercise over that of another, and that the acts amount to such dominion over the land as to which it is reasonably adapted. Whether possession is adverse to the true owner is a question of fact. *See Walker v. Hubbard*, 31 Ark. App. 43, 787 S.W.2d 251 (1990); *Hicks v. Flanagan*, 30 Ark. App. 53, 782 S.W.2d 587 (1990).

*Moses v. Dautartas*, 53 Ark. App. 242, 244, 922 S.W.2d 345 (1996). Moreover, for a trespasser to establish title to land by adverse possession, the quantum of proof necessary is greater if the trespasser has no color of title. *DeClerk v. Johnson*, 268 Ark. 868, 870, 596 S.W.2d 359 (1980). A trespasser who claims ownership of land without color of title must show actual possession to the extent of the claimed boundaries for the required seven years. *Id.* However, it was not necessary for the church to have color of title in order to adversely possess the parcel of land at issue. *See Barclay v. Tussey*, 259 Ark. 238, 241, 532 S.W.2d 193 (1976) .[1] For possession to be adverse, it is only necessary that it be hostile in the sense that it is under a claim of right, title, or ownership as distinguished from possession in conformity with, recognition of, or subservience to the superior right of the holder of title to the land. *Id.* Possession of land will not ordinarily be presumed to be adverse, but rather subservient to the true owner of the land. *See Dillaha v. Temple*, 267 Ark. 793, 797, 590 S.W.2d 331 (1979). Therefore, mere possession of land is not enough to adversely possess the land, and there is every presumption that possession of land is in subordination to the holder of the legal title to the land.

---

[1] This rule was changed by Act 776 of 1995, which included as additional requirements for establishing adverse possession that the person claiming must have held color of title to the property or to contiguous real property for at least seven years. *See* Ark. Code Ann. § 18-11-106 (Supp. 1997).

*Id.* The intention to hold adversely must be clear, distinct, and unequivocal. *Id.* Moreover, it is well settled that the trustees of a religious society may acquire title to real property by adverse possession. *See Young v. Knox*, 165 Ark. 129, 134, 263 S.W. 52 (1924). The standard of review requires that we affirm the trial court's decision on a question of fact unless it is clearly against a preponderance of the evidence. Ark. R. Civ. P. 52(a); *Superior Improvement Co. v. Mastic Corp.*, 270 Ark. 471, 604 S.W.2d 950 (1980).

The core of the church's proof of adverse possession of the 4.5 acres at issue was provided by appellee, Reverend Sylvester Van Buren. As noted above, the intent required for adverse possession is the intention to claim the land at issue under right, title, or ownership as distinguished from possession in conformity with, recognition of, or subservience to the superior right of the true owner of the land. *Barclay v. Tussey*, 259 Ark. at 241. We conclude that Reverend Van Buren's testimony shows that, from the time the congregation occupied the church building on the parcel until November 1994, the church congregation was unsure of the precise nature of its interest in the land and, moreover, recognized that Fulkerson owned the land.

On cross-examination, Reverend Van Buren testified that in 1990 or 1991 he first realized that the church did not have a deed to the land at issue. He testified further that, prior to this time, he made no assumptions about whether the church was on the land with permission or whether the church had purchased the land. Reverend Van Buren specifically stated in this regard, "I didn't know how or what kind of possession they had." In order to clarify the matter of the church's right to occupy the land, Reverend Van Buren contacted appellant Fulkerson. He asked Fulkerson to give a quitclaim deed to the church, which Fulkerson refused to do. Reverend Van Buren testified further that, after Fulkerson told him that he (Fulkerson) held legal title to the land, he (Van Buren) "accepted that as a fact." In this regard, Reverend Van Buren testified:

> I had no way of knowing. I did some research on the layout of the land and saw where he had acquired the land from a relative somewhere's . . . between 1940 and '59 or somewhere like that.

So I saw he acquired the land. And I saw no other records. During this time the courthouse was taken down and they had moved to another temporary location and everything they had was on microfilm and a lot of things wasn't clear. But as far as I knew he clearly had possession. And this is after we had talked and all. And even some weeks before we went to court. That this took place which is just a couple of years ago. Last year rather.

With regard to the time at which the church congregation decided to claim the land at issue, Reverend Van Buren testified:

Once the term adverse had been positioned and he [Fulkerson] had caused us to be evicted or had asked us out of the church and we had no other alternatives. I just wondered what we should do. It wasn't a decision that was made impulsively at that time. We made the decision that we wanted the land once we found out it wasn't ours. And as far as adverse, adverse only came into play when no other avenue worked.

When asked whether this decision would have been reached in 1994 to 1995, Reverend Van Buren replied, "If you say so, that's close."

Given this testimony by Reverend Van Buren, given that a possessor of land does not possess adversely if, while in possession, he recognizes the ownership right of the titleholder to the land, and given that proof of the possessor's intention to hold adversely must be clear, distinct, and unequivocal and must have lasted seven years, we conclude that the circuit court's finding of fact that the congregation of the Progressive Church possessed for seven years the requisite intent to possess the land at issue adversely to appellant Fulkerson is clearly against the preponderance of the evidence. Because the church congregation did not possess the land with the requisite intent for seven years, the church congregation did not adversely possess the land.

■ For the reasons set forth above, we reverse the Pulaski County Circuit Court's judgment in favor of appellee the Progressive Church, Inc., on its counterclaim for adverse possession, and remand to the circuit court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

PITTMAN, BIRD, and CRABTREE, JJ., agree.

MEADS and STROUD, JJ., dissent.

MARGARET MEADS, Judge, dissenting. The trial court determined that appellees established their claim for adverse possession of the tract of land they had occupied since 1985. Because I do not believe the trial court's findings of fact are clearly erroneous or clearly against the preponderance of the evidence, I would affirm.

Reverend Van Buren testified that he became pastor of The Progressive Church in 1985 and that he and other church members immediately began cleaning up the premises, which he described as a "wilderness" and "dumping site." The land was overgrown with vines and littered with storm debris, and the church building was infested with snakes. They cut down trees, cleared out debris, and cleaned up the highway frontage so that the building became visible from the road. They repaired the building by installing central heat and air, and by replacing the roof, siding, windows, and floor. They added a 40-foot building and office. After two years, the property was in "immaculate" condition, and the congregation received compliments for their efforts from the local community. When asked whether he had treated the property as his own, Reverend Van Buren asserted: "There's no way that I would have gone to this property and cleared it by hand . . . if I had assumed we didn't have business being there, the right to be there, or if the church didn't have the needed possession."

Reverend Van Buren further testified that he had no dealings whatsoever with appellant until sometime in the early nineties, when appellant stopped by the church, asked to speak to the preacher, complimented him on the church's efforts to improve the appearance of the church and grounds, but was silent as to his ownership of the site. It was not until 1992 that appellant, through his attorney, notified appellee that he (appellant) owned the land and was willing to negotiate a lease with the church. Subsequently, appellant personally spoke to Reverend Van Buren about a lease. Ultimately, appellant's attorney sent appellees a demand to vacate dated November 4, 1994, and filed the eject-

ment action in May 1995. All during this time, The Progressive Church steadfastly refused to negotiate with appellant, asserted its intent to remain in possession, and defied eviction efforts. Reverend Van Buren repeatedly asked appellant for a quitclaim deed to the premises. He contended there were never any "negotiations" with appellant for a lease, and "the only reason·lease was mentioned is because Mr. Fulkerson dominated the conversation. You only talk about what Mr. Fulkerson wants to talk about. It doesn't matter what you say."

To establish adverse possession which ripens into ownership, the claimant must prove possession for seven years that has been actual, open, notorious, continuous, hostile, and exclusive, accompanied with an intent to hold against the true owner. *Utley v. Raff*, 255 Ark. 824, 827, 502 S.W.2d 629, 632 (1973). The majority believes appellee failed to establish the requisite intent to hold against the true owner, because once appellant asserted his ownership and the church "recognized" appellant's ownership right, the church's occupancy ceased to be adverse, thus interrupting the seven-year statutory period. I disagree.

First, I do not believe the church recognized appellant's ownership. Church members began to occupy the premises in 1985, using the building regularly, without interruption, and without notice of appellant's ownership until 1992. After being notified of appellant's title and after receiving a demand to vacate and later an eviction notice, they continued to occupy the premises, using the building regularly and without interruption. By their actions, the congregation continued to repudiate appellant's ownership even through the date of trial and beyond. To date, they have been in continuous possession for almost thirteen years.

Second, I believe the church clearly demonstrated a hostile intent within the meaning of the law. As this court stated in *Walker v. Hubbard*, 31 Ark. App. 43, 787 S.W.2d 251 (1990):

> The word hostile, as used in the law of adverse possession, must not be read too literally. For adverse possession to be hostile, it is not necessary that the possessor have a conscious feeling of ill will or enmity toward his neighbor. Claim of ownership, even under a mistaken belief, is nevertheless adverse. (Citation omitted.)

*Id.* at 46-47. Additionally, for possession to be adverse, it is only necessary that it be hostile in the sense that it is under a claim of right, title, or ownership as distinguished from possession in conformity with, recognition of, or subservience to, the superior right of the owner. *Barclay v. Tussey*, 259 Ark. 238, 241, 532 S.W.2d 193, 195 (1976). For the reasons stated in the previous paragraph, I cannot say that appellee's possession was "in conformity with, recognition of, or subservience to" appellant's rights.

Third, it appears to me that appellee established seven years of possession with all the qualifying factors before appellant ever asserted his ownership.

I would affirm.

Stroud, J. joins in this dissent.