The Crums filed a timely notice of appeal, raising the following points: (1) the circuit court erred in not finding that the line of trees and the eastern edge of the turn-row established a boundary by acquiescence,[2] and (2) the circuit court erred in its alternative finding that the Crums did not acquire title to the property through adverse possession.
Boundary-line cases are reviewed de novo. Durham v. McCone , 2018 Ark. App. 392, at 3, 555 S.W.3d 907, 909. However, our court will not reverse findings of fact unless they are clearly erroneous. Id. A finding of fact is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been committed. Id. Because the location of a boundary is a disputed question of fact, we will affirm the circuit court's finding unless it is clearly against the preponderance of the evidence. Id. In reviewing a circuit court's findings of fact, we give due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. Id.
Using these standards, we examine the facts presented to the circuit court. The parties have disputed this property line since 1974, but the first notable argument occurred in 1981 when the Siemses alleged that John Crum was bulldozing a line of trees between the parties' properties. The Siemses explained that they confronted John, and he abstained from further work along the tree line. John denied that this confrontation occurred or that he bulldozed the trees at all. Instead, he testified that there was a meeting in 1981 that resulted in the parties orally agreeing on a boundary line. According to John, the parties agreed that the line would be the tree line as extended to the north and south and that the agreement was memorialized *615 by steel posts driven on the north and south ends of the line by the late Edward Siems[3] and a steel rod driven into the ground by John on the north end next to the post Edward set.
The Siemses deny that there was any agreement in 1981. To support their position, they introduced a handwritten document by Edward Siems that memorialized an agreement in October 1988. This document was not signed by John. John denies that there was ever an agreement in 1988.
After years of conflict, in 2013, the Siemses had Delta Survey Company perform a survey of the property line. The surveyor did not find the posts that John testified were placed by Edward Siems in 1981 to evidence the agreement; nor did he find the steel rod John allegedly placed. However, after having been asked by John to return, and with a strong metal detector, the surveyor did eventually find a rebar on the north end of the line.
Both parties also presented extensive testimony concerning a turn-row road, a line of trees, and a levee that all extended north and south and separated the properties. John asserted below that he made use of the turn-row to the exclusion of all others.[4] Richard Siems testified that there had been times when he saw John grading the turn-row. John presented two witnesses that worked his farm dating back to 1980, and both testified that they believed the turn-row was located on the Crums' property because John mowed and maintained it. The turn-row is to the west side of the line of trees and runs parallel to the line of trees. The line of trees consists of three to four trees that do not extend the length of the property. The trees are located roughly midway between the north and south points of the boundary line. The Siemses' levee is located to the east of the trees and runs the length of the property.
The Crums' first point on appeal is that the circuit court erred by not finding a boundary by acquiescence. In Myers v. Yingling , 372 Ark. 523, 527, 279 S.W.3d 83, 87 (2008), our supreme court held that "whenever adjoining landowners tacitly accept a fence line or other monument as the visible evidence of their dividing line and thus apparently consent to that line, it becomes the boundary by acquiescence." A boundary line by acquiescence is inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of the boundary line. In such circumstances, the adjoining owners and their grantees are precluded from claiming that the boundary so recognized and acquiesced in is not the true one, although it may not be. Id. A boundary by acquiescence is usually represented by a fence, a turn-row, a lane, a ditch, or some other monument tacitly accepted as visible evidence of a dividing line. Durham , 2018 Ark. App. 392, at 10, 555 S.W.3d at 912. Whether a boundary line by acquiescence exists is to be determined on the evidence in each individual case. Clark v. Casebier , 92 Ark. App. 472, 477, 215 S.W.3d 684, 686-87 (2005).
The Crums assert that it was established at trial that since at least the 1970s, the line of trees roughly in the middle of the property and the eastern edge of the adjacent turn-row were accepted as the boundary line between the neighboring parties and that, accordingly, it constituted a boundary by acquiescence.
We turn to Lammey v. Eckel , 62 Ark. App. 208, 970 S.W.2d 307 (1998), and Clark , 92 Ark. App. 472, 215 S.W.3d 684, *616 for guidance. In Lammey , we held that evidence regarding the location of an alleged boundary line was insufficient to establish the existence of an oral boundary agreement or boundary by acquiescence because the points of the alleged boundary line were approximate, and the boundary was not conclusive. We explained that the appellant's evidence may have provided a general idea regarding the location of what they contended was the agreed boundary, but we could not say-given the conflicts in their testimony-that the circuit court's decision should be reversed.
We distinguished Lammey in Clark . There, we affirmed the circuit court's finding that an irrigation ditch was a boundary by acquiescence. In doing so, we explained that the ditch created a definitive, physical boundary for a vast majority of the length between the properties. We further held, "Arkansas law does not support the establishment of a boundary by acquiescence along an invisible line between two large land forms, such as levees, that are not truly capable of being used as accurate markers of a boundary." Clark , 92 Ark. App. at 478-79, 215 S.W.3d at 688.
The facts in this case are more analogous to those in Lammey . Here, the circuit court found that the evidence did not establish by a preponderance of the evidence that the parties, by their conduct, accepted a particular monument as visible evidence of the property line. As the circuit court noted in its letter opinion, there were only three to four trees and they did not extend the length or even the vast majority of the property. The turn-row cannot make up for this shortcoming. While caselaw acknowledges that a boundary by acquiescence can be represented by a turn-row, see Durham , supra , the turn-row in this specific case does not qualify. The turn-row here is a very primitive, noncultivated strip of land. Based on the exhibits introduced at trial that included numerous photos of the disputed area, it is not clear that the turn-row runs the entire length of the two properties. Regarding a photo of the turn-row from 2009, Richard testified, "I guess that area is wide enough to drive a tractor down." Thus, we agree with the circuit court that the Crums' purported boundary line is incapable of being used as an accurate marker of a boundary.
The Crums further direct us to Williamson v. Rainwater , 236 Ark. 885, 886-87, 370 S.W.2d 443, 444 (1963), to support their argument that the Siemses acquiesced in the Crums' use of the land west of their levee. The Crums argue that because the Siemses dug the levee east of the trees and did not farm west of the trees or the eastern edge of the turn-row, they (the Crums) acquired the land. In Williamson , the supreme court found that a fence that was built fifty feet from the surveyed line supported the claim of boundary by acquiescence. The court reasoned:
There is no doubt that both Mr. Williamson and Mr. Rainwater acquiesced in the theory that the fence was on the true line. In the first place, Mr. Williamson built the fence. It is not likely that he would have left 50 feet of his land outside his fence. He may have built the fence a few feet from what he considered the section line in order to give him control of the fence, but surely he would not have intentionally left 50 feet of his land outside the fence. There does not appear to be any topographical reason for putting the fence at one place rather than the other.
Unlike Williamson , the circuit court found there was a reason to explain why the Siemses put the levee at one location rather than another and why they farm only up to the levee. The circuit court relied on Richard Siems's testimony that levees he pulled were simply to hold rice water; they *617 were not necessarily on the boundary line for farming purposes because the land west of his field contained a berm, a ditch, and trees. Likewise, the Crums never crossed the trees on the Siemses' side to farm. Based on this, it does not appear that the Siemses intended to abandon their unfarmable property. Accordingly, the court did not clearly err in finding that the evidence regarding the location of the alleged boundary line was insufficient to establish a boundary by acquiescence.
For their next point on appeal, the Crums assert that the circuit court erred in finding that they failed to establish adverse possession of the disputed property. In order to establish a claim for adverse possession, a party must prove that he or she had possessed the property in question continuously for more than seven years and that the possession was visible, notorious, distinct, exclusive, hostile, and with the intent to hold against the true owner. Boyette v. Vogelpohl , 92 Ark. App. 436, 443, 214 S.W.3d 874, 879 (2005). Mere possession of land is not enough to adversely possess the land, and there is every presumption that possession of land is in subordination to the holder of the legal title to the land. Fulkerson v. Van Buren , 60 Ark. App. 257, 260-61, 961 S.W.2d 780, 782 (1998). The intention to hold adversely must be clear, distinct, and unequivocal. Id.
To support their argument, the Crums explain that they have utilized and maintained the property to the west of the line of trees and eastern edge of the turn-row (including the turn-row itself) for over four decades-since they purchased the land. They further assert that the Siemses never took issue with the Crums' use of the property. However, the Siemses did take issue with the Crums' use of the property based on Richard's testimony that after his dad passed away in 2004, he continually had to police the line. As the circuit court found, the evidence was conflicting as to whether the Crums' use of the turn-row was exclusive. There is no evidence that the Crums ever excluded the Siemses from the turn-row or gated it. John said he gave the Siemses permission to use the turn-row, but there was no evidence he intended to oust the Siemses. In fact, the testimony established that John apparently asked permission of the Siemses to put a culvert in at the end of the turn-row to access the gravel road to the north, the Siemses denied permission, but the culvert appeared anyway. Based on the circuit court's letter opinion, it is evident the court found the Siemses to be more credible. Giving due deference to the circuit court's superior position to make credibility determinations and weigh the evidence, we cannot say that the circuit court clearly erred.
Affirmed.
Gruber, C.J., and Klappenbach, J., agree.

The circuit court found that the survey established the proper boundary line and that the proper line was actually eleven feet west of the so-called tree line.

Edward Siems was married to Dorothy Siems and was Richard's father. Edward passed away in 2004.

In farming, a turn-row is a dirt road of sorts that is used by tractors to turn around at the end of a row.