Cite as 2023 Ark. App. 196

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-22-115

| | |
|---|---|
| SNC REVOCABLE TRUST<br><br>APPELLANT<br><br>V.<br><br>GERARDO R. GALDAMEZ AND AMY B. GALDAMEZ<br><br>APPELLEES | Opinion Delivered April 5, 2023<br><br>APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT<br>[NO. 12CV-21-69]<br><br>HONORABLE HOLLY MEYER, JUDGE<br><br>AFFIRMED |

**MIKE MURPHY, Judge**

This case arises from a boundary-line dispute concerning a roughly 1828-square-foot strip of land between two tracts of land in the Eden Isle development in Heber Springs, Arkansas. One tract is owned by appellant, SNC Revocable Trust (SNC Trust), and the other tract is owned by the appellees, Amy and Gerardo Galdamez. On appeal, SNC argues that the trial court erred in denying its claims for title by boundary by acquiescence, adverse possession, or an easement by prescription.

Suzanna Clark Abston and her mother are cotrustees of the SNC Trust. The trust's property, located at 933 Lakeland Drive in Cleburne County, Arkansas, sits on lot C-35-C

on a square cul-de-sac. It acquired the property in 2013.[1] A survey was not obtained. The home was constructed years ago, and the "front" door of the home faces the neighboring vacant lot to the south, and the east end of the home, which is a carport with a second story loft bedroom, abuts the cul-de-sac. Directly south of the trust's lot is the Galdamezes' property, which includes the vacant lot C-35-B.

Lot C-35-B, is a vacant lot mostly clear with sparse grass and weeds and some fully grown trees, including three large oak trees approximately six feet from the disputed boundary line between the properties.

In the fall of 2020, SNC Trust began a remodel project that included a portico over the front door and an enlarged cement porch. As part of this project, rock was removed from the foundation area and placed upon the Galdamezes' vacant lot. This construction project included a rock drainage swale in the western portion of the disputed tract on the vacant lot. The construction project, contractors parking on the disputed tract, placement of a dumpster on the disputed tract, and use of the disputed tract for construction of the swale, which started out as permissive, all culminated in this suit.

Once the Galdamezes notified the Abston family that their construction was encroaching on their property, the Abston family had a survey conducted ("the Sayles survey") in April 2021. The record boundary line matched that of the one in the "Lancaster

---

[1] In August 2014, SNC Properties, LLC, conveyed the real property and improvements now referred to as the SNC Trust Property to the SNC Trust.

survey" that the Galdamezes had done when they purchased the property. The Abston family never saw the Lancaster survey before they had their survey done. Once this suit was filed, Mr. Galdamez erected fence posts down the middle of the tract of land so the Abston family was no longer able to use the strip as a driveway.

A hearing was held on September 29, 2021, and testimony established the following. From 2001 until August 2013, the Phillips family owned 933 Lakeland Drive. During their ownership, the Phillips family made no claim to any portion of the vacant lot although, Mr. Phillips testified that he was unsure exactly where his lot line was located. Mr. Phillips said he planted a Japanese maple tree and placed a "washtub size" rock in the now disputed tract to prevent cars from using this route. He stated that he did park his golf cart in this area when it was in use on his intermittent weekend visits to his vacation home. The golf cart was kept covered in the carport when not in use.

The Abston family, on behalf of the trust, bought the property from the Phillips family. They testified that they maintained the tract by leaf blowing, minor limb cutting, and occasional weed spraying. They installed an invisible fence for their dogs on the tract that followed the line of oak trees. In 2014, shortly after purchasing the property, the Abston family purchased river-rock gravel and placed it in the disputed tract and used the area to park their vehicles and access the "front" door when staying at the property. Before they added the gravel, the area was more landscaped with mulch. Testimony further established that they removed the stone pillar near the entrance placed by Mr. Phillips so that cars would not strike it while backing out into the cul-de-sac. They did this shortly after they purchased

3

the property. The family parked their vehicles east of the house in the adjacent common gravel cul-de-sac parking area but also down the south side of the home. The home was never their full-time residence.

Mr. Galdamez testified that he purchased 935 Lakeland and the vacant lot next to it in 2019 with the intent to update the property for a family lake house. Before the Galdamezes, the Penick family owned both 935 Lakeland Drive and the vacant lot for roughly forty years. Upon purchasing the property, the Galdamezes obtained the Lancaster survey. The Lancaster survey includes the following note: "Gravel from Lot C-35-C across lot line as shown." Galdamez testified that he did not witness the Abston family's use of the disputed tract despite his frequent visits and use of his backyard and lot. Mr. Galdamez believed he was present at his home more than his neighbors used their home.

Following the bench trial, the court agreed to accept posttrial briefs from each party and set closing arguments for a later date. Ultimately, the court rejected the SNC Trust's claims and made findings of fact and conclusions of law. SNC Trust now appeals.

Boundary-line cases are reviewed de novo. *Waggoner v. Alford*, 2021 Ark. App. 120, at 5, 619 S.W.3d 59, 62–63. This court will not reverse findings of fact unless they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when, although there is evidence to support it, we are left with the definite and firm conviction that a mistake has been made. *Id.* Because the location of a boundary is a disputed question of fact, we will affirm the trial court's finding unless it is clearly against the preponderance of the evidence. *Id.*

SNC Trust first challenges the trial court's failure to find a boundary by acquiescence. SNC Trust argues it was erroneous for the trial court to fail to consider the Phillips family's prior use and in finding no definite and certain boundary existed.

In *Myers v. Yingling*, 372 Ark. 523, 527, 279 S.W.3d 83, 87 (2008), the supreme court held that "[w]henever adjoining landowners tacitly accept a fence line or other monument as the visible evidence of their dividing line and thus apparently consent to that line, it becomes the boundary by acquiescence." A boundary line by acquiescence is inferred from the landowners' conduct over many years so as to imply the existence of an agreement about the location of the boundary line. *Crum v. Siems*, 2019 Ark. App. 232, at 4–5, 575 S.W.3d 612, 615. In such circumstances, the adjoining owners and their grantees are precluded from claiming that the boundary so recognized and acquiesced in is not the true one, although it may not be. *Id.* Whether a boundary line by acquiescence exists is to be determined on the evidence in each individual case. *Id.*

> Concerning this theory, the court found,
>
> The Plaintiff's proposed Tract boundary, while now surveyed and definite in preparation for trial, formerly lacked definition and rather ran from an unmarked location on the ground where some errant pea gravel lies to a tree on the back property line. There is nothing about this proposed Tract boundary that is obvious or definite that anyone would or should notice. Certainly it is wholly insufficient to be an agreed or even tacitly agreed boundary.

The court's ruling was primarily based on the fact that there was no actual objective boundary or definite marker between the two properties. A boundary by acquiescence is usually represented by a fence, a turnrow, a lane, a ditch, or some other monument tacitly

accepted as visible evidence of a dividing line. *Hedger Bros. Cement & Materials v. Stump*, 69 Ark. App. 219, 10 S.W.3d 926 (2000). Arkansas law does not support the establishment of a boundary by acquiescence along an invisible line between two large landforms that are not truly capable of being used as accurate markers of a boundary. *Id.* Here, while there are trees on the tract, they are not a precise line of trees bordering the property and driveway as SNC Trust argues. Rather, six trees are sporadically situated such that they do not create a definite and certain boundary. Additionally, the court found that "[SNC Trust] cannot say that the edge of a driveway is the boundary because their claim is inexplicably feet beyond the grown trees which border the driveway." We agree. There was no conclusive boundary line; therefore, there was no reason for the trial court to address the previous owners' prior use and intent.

In support of its argument, SNC Trust directs us to *Vaughn v. Chandler*, 237 Ark. 214, 216, 372 S.W.2d 213, 215 (1963), *Boyette v. Vogelpohl*, 92 Ark. App. 436, 214 S.W.3d 874 (2005), and *Hattabaugh v. Housley*, 93 Ark. App. 167, 217 S.W.3d 132 (2005). These cases are distinguishable because they involved fences serving as the visible evidence of a boundary. Here, the proof regarding the location of the boundary is not as conclusive. Sporadically placed trees feet away from a requested boundary line are not sufficient to establish a boundary by acquiescence, and the trial court's finding is affirmed.

SNC Trust also contends it was entitled to the disputed tract through adverse possession. The establishment of title to real property through adverse possession is governed by both statutes and case law. Because the parties stipulated that the statutory elements of

color of title and payment of taxes on contiguous property for seven years were met, we need only consider the common-law elements. Possession alone does not ripen into ownership, but the possession must be adverse to the true owner or record title holder before his or her title is in any way affected by the possession. *In re Est. of Slaughter*, 2021 Ark. 199, at 7, 632 S.W.3d 746, 750. To establish ownership to property by adverse possession, that party has the burden of proof to show, by a preponderance of the evidence, possession for seven years. *Id.* The possession must be actual, open, continuous, hostile, and exclusive and be accompanied by an intent to hold adversely and in derogation of—and not in conformity with—the right of the true owner. *Id.*

It has been said that if the claimant "raises his flag and keeps it up" continuously for the statutory period of time, knowledge of his hostile claim of title may be inferred as a matter of fact. *Wallace v. Ayres*, 228 Ark. 1007, 1010, 311 S.W.2d 758, 760 (1958). Here, however, one cannot tell by looking at the gravel strip or the areas around and west of the large trees that any person other than the record owners have occupied or are occupying the strip for anything other than what it has been used for by the Penicks and Galdamezes. The evidence established there is little grass and little maintenance required on that area of the property.

In favor of SNC Trust's argument, Ms. Abston testified that she once added gravel to the strip. However, adding gravel to an already graveled area did not alter the appearance so as to give notice to the neighboring landowners of a hostile claim against their land. Additionally, while Mr. Phillips added a tree and a large rock that SNC Trust later removed,

the testimony did not definitively establish if these physical alterations occurred on the Penicks' and Galdamezes' strip.[2] Even if these additions were on the Galdamez property, it was a one-time, sporadic event. Notably, a portion of the graveled area rightfully belongs to SNC Trust, so the use in general of the graveled area was not enough to put the adjoining landowners on notice. Further, evidence is lacking to explain who originally placed gravel on the tract or why it was done. Our courts have long held, "Possession . . . need not be manifested in any particular manner; but there must be such physical evidence thereof as reasonably to indicate to the owner, if he visits the premises and is a man of ordinary prudence, that a claim of ownership adverse to his is being asserted." *Terral v. Brooks*, 194 Ark. 311, 317, 108 S.W.2d 489, 493 (1937). We cannot say that the Phillips family and the Abston family "raised its flag" when it maintained the status quo.

SNC Trust additionally argues that the court erred by applying the wrong standard to continuous use. We need not consider this argument, however, because a party claiming title to land by adverse possession must prove all the elements thereof, which, as explained above, was not done here. *See Follett v. Fitzsimmons*, 103 Ark. App. 82, 83, 286 S.W.3d 742, 744 (2008).

---

[2]Ms. Abston testified that she could not honestly say if the stone was located on the boundary line. In reviewing a trial court's findings of fact, we give due deference to the court's superior position to determine the credibility of witnesses and the weight to be accorded to their testimony. *Boyd v. Roberts*, 98 Ark. App. 385, 390, 255 S.W.3d 895, 898 (2007).

8

Finally, the Trust argues that, at a minimum, it established entitlement to an easement by prescription through its use of the driveway for more than seven years. We recently explained the law in *Pop-A-Duck, Inc. v. Gardner*, 2022 Ark. App. 88, at 9–10, 642 S.W.3d 220, 227–28.

> A prescriptive easement may be gained by one not in fee possession of the land by operation of law in a manner similar to adverse possession. Like adverse possession, "prescriptive easements . . . are not favored in the law, since they necessarily work corresponding losses or forfeitures in the rights of other persons." In Arkansas, it is generally required that one asserting an easement by prescription show by a preponderance of the evidence that one's use has been adverse to the true owner and under a claim of right for the statutory period. The statutory period of seven years for adverse possession applies to prescriptive easements. Furthermore, it is well established that whether use of a roadway is permissive or adverse is a factual question; therefore, each case must be determined by the individual facts of the case, and former decisions are rarely controlling on this factual issue.
>
> Overt activity on the part of the user is necessary to make it clear to the owner of the property that an adverse use and claim are being exerted. Mere permissive use of an easement cannot ripen into an adverse claim without clear action that places the owner on notice. Some circumstance or act in addition to, or in connection with, the use that indicates the use was not merely permissive is required to establish a right by prescription.

(Internal citations omitted.)

SNC Trust argues that it altered the property so that it could be used as a driveway, added gravel to it, and maintained it to make clear that an adverse use and claim were being exerted. However, as explained above, the evidence established that this was permissive, and it therefore cannot be adverse.

Accordingly, we cannot say that the findings by the trial court are against the clear preponderance of the evidence.

Affirmed.

HARRISON, C.J., and BARRETT, J., agree.

*Friday, Eldredge & Clark, LLP*, by: *Bruce B. Tidwell* and *Joshua C. Ashley*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Richard Mays Law Firm PLLC*, by: *Richard H. Mays*, for appellee.